recpt # 2793
1538

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

DAVID ZENO, individually, and on behalf of
all others similarly situated,

Plaintiff,

v.

FORD MOTOR COMPANY, INC.

Defendant.

## 05   0418

No. _____



## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441, defendant Ford Motor Company ("Ford") hereby removes the state court action entitled *Zeno v. Ford Motor Company, Inc.*, No. C-D05-4652, filed in the Court of Common Pleas, Allegheny County, Pennsylvania. Plaintiff's Complaint was filed on February 24, 2005, and was served on Ford on February 28, 2005. Since thirty days have not yet elapsed, this Notice of Removal is filed in a timely manner under 28 U.S.C. § 1446(b). A copy of plaintiff's Complaint is filed with this notice as Exhibit A.

## Preliminary Statement

1.     Plaintiff's Complaint is the ninth in a series of class action suits asserting almost identical claims concerning radiators in 2000 and 2001 model year F-150s. Three of those actions have been dismissed. *Murrin v. Ford Motor Company* was brought in New York state court in April 2001. Upon motion by Ford, the case was dismissed; the dismissal was later reaffirmed upon appeal. *Miller v. Ford Motor Company and Roberts Motor, Inc.*, was brought in Illinois state court in November 2001. Shortly thereafter, plaintiff filed a motion for voluntary dismissal, which was granted. Similarly, *Jones v. Ford Motor Co.* was filed in Madison County,

Illinois in June of 2004, and was voluntarily dismissed after Ford filed a motion to transfer to a more appropriate venue.

2.      The fourth case, *Ocanas v. Ford Motor Company*, was brought in Texas state court in April 2001. The present action is patterned almost verbatim after the *Ocanas* case, using copycat language to assert similar class claims. The *Ocanas* trial court granted certification of a statewide class on December 19, 2001, and granted certification of a nationwide class on March 25, 2002. Both classes have since been decertified on appeal.

3.      The fifth case, *Williams v. Ford Motor Company*, was brought in South Carolina state court in May 2002. Like this case, the *Williams* action was patterned almost verbatim after the *Ocanas* case. The parties have briefed class certification in this case, and are awaiting a ruling from the South Carolina Court of Common Pleas.

4.      The sixth case, *Pedersen v. Ford Motor Company*, was brought in California state court in November 2003. The parties are currently briefing class certification.

5.      The seventh case, *Roland v. Ford Motor Company*, was brought in Georgia state court in June 2004. It is largely identical to the *Williams* and *Ocanas* suits. The parties in that case are currently engaged in class-certification-related discovery.

6.      The eighth case, *Ahlers v. Ford Motor Co.*, was filed in Madison County, Illinois in September 2004. It is largely identical to the *Roland, Williams* and *Ocanas* suits. It is currently pending in that jurisdiction.

7.      Moreover, plaintiff brought this lawsuit more than three years after Ford voluntarily initiated a worldwide Owner Notification Program ("Program") designed to address any customer concerns about the radiators used in F-150 trucks during the 2000 and 2001 model years. (*See* Affidavit of Brett A. Castleberry, attached hereto as Exhibit B ("Castleberry Aff.")

¶¶ 3, 5.)  The Program has already offered affected customers – including all members of plaintiff's putative class – their choice of the following remedies: (1) $100.00 cash, (2) a $500.00 certificate toward the purchase of a new Ford vehicle, or (3) free installation of a replacement "upgraded" radiator.  (*See* Castleberry Aff. ¶ 2.)[1]  In contrast, plaintiff's lawsuit purports to demand injunctive relief and recission for all Pennsylvania customers, regardless of their personal preferences.  (Compl., Prayer for Relief.)  Plaintiff waited to bring his claims until the existing Program was well underway.  (*See* Castleberry Aff. ¶ 6 ("As of June 4, 2002, Ford has received 228,834 responses to these letters regarding the Program.").)

## Grounds for Removal

8.     There is jurisdiction over this removed action pursuant to 28 U.S.C. § 1332. Original federal jurisdiction exists over this case because all parties are diverse and the total amount in controversy on behalf of the class, properly measured, exceeds $5 million.

## Diversity Jurisdiction

9.     Plaintiff David Zeno is a citizen of Pennsylvania.  (*See* Complaint ("Compl.") ¶ 1.)  Defendant Ford is a Delaware corporation with its principal place of business in Michigan.  (Compl. ¶ 2.)  Therefore, there is diversity between plaintiff and defendant in this matter.  *See* 28 U.S.C. § 1332(d)(2)(A).

10.     Plaintiff's Complaint also meets the $5 million amount-in-controversy requirement for diversity jurisdiction over class actions.  *See* 28 U.S.C. § 1332(d)(2).

11.     Plaintiff seeks on behalf of himself and all others similarly situated "compensatory damages exceeding $25,000" and "recessionary and injunctive relief."  (Compl.,

---

[1]     Plaintiff claims that he personally "was never informed of this offer."  (Compl. ¶ 8.)  This is most likely because plaintiff bought his truck after May 5, 2001, the date Ford corrected any possible mistakes in its Dealer's Guide.  (Castleberry Aff. ¶ 4.)

Prayer for Relief.)  Plaintiff claims that "the collective damages of Plaintiff and Class members *is [sic] believed* not to exceed $5,000,000 ..." (Compl. ¶ 5 (emphasis added).)

12.     Plaintiff's "belief" as to the collective damages of the class notwithstanding, an examination of his Complaint shows that they will easily exceed $5 million. .

13.     Plaintiff seeks injunctive relief, including recission of his (and the absent class members') contracts.  (Compl. Prayer for Relief.)  In order to comply with the relief plaintiff seeks, Ford would have to refund the current value of each putative class member's Ford F-150 – a truck that, even used, sells for in excess of $10,000.  (*See* Blue Book Attachment, Exhibit C.)

14.     Plaintiff claims that "[i]t is believed that the Class contains thousands of members." (Compl. ¶ 17.)

15.     Assuming only 500 putative class members – far fewer than plaintiff alleges – the recessionary relief alone (leaving aside the value of any further injunctive relief, the cost of creating a claims resolution facility, or attorneys' fees) will easily exceed $5 million.

16.     In addition, Ford would also have to modify its current Customer Satisfaction Program, and provide – as plaintiff request – "[a]n appropriate claims resolution facility." (Compl., Prayer for Relief.)  Both of these forms of relief would significantly add to the value of plaintiff's class action lawsuit.

17.     Therefore, original jurisdiction over this case exists under 28 U.S.C. § 1332.

18.     Concurrent with the filing of this Notice of Removal, Ford is giving written Notice of the Notice of Removal to the Court of Common Pleas, Allegheny County, Pennsylvania.

Dated: March 28. 2005

Respectfully submitted,

DICKEY, McCAMEY & CHILCOTE, PC

By: _____

Nancy R. Winschel, Esquire
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402


OF COUNSEL

    John H. Beisner
    Brian C. Anderson
    Evelyn L. Becker
    O'MELVENY & MYERS LLP
    555 13th Street, N.W.
    Suite 500 West
    Washington, D.C. 20004
    (202) 383-5300
    (202) 383-5414 (Fax)


COUNSEL FOR DEFENDANT FORD
MOTOR COMPANY

EXHIBIT "A"



## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

DAVID ZENO, on behalf of himself and all
others similarly situated,

         Plaintiff,

v.

FORD MOTOR COMPANY, INC.

         Defendant.

CIVIL DIVISION

CIVIL ACTION NO.:

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

CODE: 190

COUNSEL OF RECORD FOR PLAINTIFF.

Joseph N. Kravec, Jr., Esquire
(Pa. Bar No. 68992)
SPECTER SPECTER EVANS
  & MANOGUE, P.C.
The 26th Floor
Koppers Building
Pittsburgh, PA 15219
(412) 642-2300
(412) 642-2309 (facsimile)

NOTICE OF SUIT TO SHERIFF OF ALLEGHENY CO.                    ) SHERIFF
You are hereby notified that on ___Feb 24 2005___             )
a COMPLAINT has been (filed/reinstated) in this case         ) SURCHARGE
and you are required to serve the same on or before the       )
___26th___ day of ___May___, 20 05                           ) MILEAGE
MICHAEL LAME, PROTHONOTARY                                     )

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

DAVID ZENO, on behalf of himself and all
others similarly situated,

        Plaintiff,

v.

FORD MOTOR COMPANY, INC.

        Defendant.

CIVIL DIVISION   GD05- 4652

CIVIL ACTION NO.:

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

CODE: 190

COUNSEL OF RECORD FOR PLAINTIFF:

Joseph N. Kravec, Jr., Esquire
(Pa. Bar No. 68992)
SPECTER SPECTER EVANS
   & MANOGUE, P.C.
The 26th Floor
Koppers Building
Pittsburgh, PA 15219
(412) 642-2300
(412) 642-2309 (facsimile)

FILED
05 MAR -7 PM 3:35
ALLEGHENY COUNTY



FILED

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| DAVID ZENO, on behalf of himself and all others similarly situated, | CIVIL DIVISION |
| | CIVIL ACTION NO.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| FORD MOTOR COMPANY, INC. | CODE: 190 |
| Defendant. | COUNSEL OF RECORD FOR PLAINTIFF: |

Joseph N. Kravec, Jr., Esquire
(Pa. Bar No. 68992)
SPECTER SPECTER EVANS
   & MANOGUE, P.C.
The 26th Floor
Koppers Building
Pittsburgh, PA 15219
(412) 642-2300
(412) 642-2309 (facsimile)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ZENO, individually and on behalf of all others similarly situated, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

LAWYER REFERRAL SERVICE
THE ALLEGHENY COUNTY BAR ASSOCIATION
920 CITY/COUNTY BUILDING
PITTSBURGH, PENNSYLVANIA 15219
TELEPHONE: 412-261-0518

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| DAVID ZENO, individually and on<br>behalf of all others similarly situated, ) | Civil Action No. |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FORD MOTOR COMPANY, INC. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

## INTRODUCTION

This class action is brought by Plaintiff David Zeno on behalf of himself and all other persons in the Commonwealth of Pennsylvania who purchased or leased a new F-150 vehicle model year 2000 or 2001 with a "Class III Trailer Towing Group" or "Heavy-Duty Electrical/Cooling Group" option from Ford Motor Company (as more fully defined herein, the "Class"). These options were part of the sales contract between Plaintiff and the Class and Ford Motor Company (hereinafter "Ford") as identified in the invoice and window sticker for the vehicle. Plaintiff and Class members paid extra money for these contracted options which were to have included an upgraded radiator having a thicker gauge core than base or stock radiators regularly on F-150 vehicles. Unbeknownst to Plaintiff and the Class, Ford did not provide them with the upgraded radiator they paid for, but instead gave them a base or stock radiator in violation of their sales contract. Plaintiff and the Class have suffered economic losses as a result of Ford's misconduct.

## PARTIES

1.      Plaintiff, David Zeno is an adult individual residing at 4630 North Emblem Drive, Pittsburgh, Pennsylvania 15227.  Plaintiff purchased a new F-150 vehicle model year 2001 with a "Class III Trailer Towing Group" option from an authorized Ford dealer in Crawford County, Pennsylvania.

2.      Defendant Ford Motor Company is a corporation organized under the laws of the State of Delaware with its principle place of business at 1 American Road, Dearborn, Michigan 48126-2798.  Ford directly and through its authorized dealers regularly and continuously conducts business, including selling F-150 vehicles throughout the United States, including the Commonwealth of Pennsylvania and Allegheny County.

## JURISDICTION AND VENUE

3.      Plaintiff currently resides in this County and resided in this County when he purchased the F-150 at issue.  Defendant regularly and continuously sells F-150s in this County through multiple authorized dealers located in this County.  Jurisdiction venue are proper in this Court.

4.      The claims asserted herein are brought are brought solely under Pennsylvania state law on behalf of a Class of persons who purchased or leased new F-150 vehicles in the Commonwealth of Pennsylvania from Ford through its authorized  dealers.  Thus, there is no federal question jurisdiction under 28 U.S.C. §1331.

5.      Plaintiff's damages for his individual claim does not exceed $75,000, exclusive of interest and costs.  Further, the collective damages of Plaintiff and Class members is believed not to exceed $5,000,000, exclusive of interest and costs.  Thus, there is no diversity jurisdiction pursuant to 28 U.S.C. §1332.

2

## FACTUAL ALLEGATIONS

6.     This action is brought on behalf of all persons and entities who purchased or leased in the Commonwealth of Pennsylvania new model year 2000 or 2001 F-150 vehicles that were contracted by Ford to have upgraded radiators but were in fact manufactured and sold with base or stock radiators of lesser quality.[1]

7.     As an option on the 2000 - 2001 F-150 vehicles, Ford offered the "Class III Trailer Towing Group" and on others the "Heavy-Duty Electrical/Cooling Group." These options were part of the sales contracts between Plaintiff and the Class and Ford as they were listed as included options in the invoices and window stickers for the vehicles. The invoices and window stickers also showed that Plaintiff and Class members were charged an extra amount of money for these options. While the invoices and window stickers did not describe what those options included, Ford's sales materials for the vehicles did. Specifically, Ford's F-150 sales materials given to consumers and dealers stated that these options included an upgraded radiator, a radiator thicker than the base or stock radiator. In fact, unbeknownst to Plaintiff and the Class, every F-150 vehicle of model years 2000 and 2001 that were sold with the Class III Trailer Towing Group or the Heavy-Duty Electrical/Cooling Group were sold without an upgraded radiator even though Plaintiff and the Class paid for an upgraded radiator.

---

[1]     "Base" or "stock" radiator refers to the radiator that was intended for F-150's that had no package to include an "upgraded" radiator.  Base or stock radiators are 1.02" in thickness. "Upgraded radiators," as used throughout this Complaint, are the radiators that were intended to be installed on F-150's that were sold with packages, such as the Class III Trailer Towing Group or Heavy-Duty Electrical/Cooling Group, to include an upgraded radiator.  The upgraded radiator is 1.42" in thickness.

8       Ford did not publically disclose that it had failed to install upgraded radiators on 2000 or 2001 F-150s with the Class III Trailer Towing Group or Heavy Duty Electrical/Cooling Group options until the Summer or Fall of 2001 when it claims to have made an offer available to purchasers of these options. Prior to this disclosure, Ford's failure to include the upgraded radiator with these options was known only internally by Ford's executives. Plaintiff was never informed of this offer by Ford and believes that Ford never informed most Class members of this offer. Plaintiff further avers that Ford's purported offer would not fully compensate Plaintiff or Class members for their losses.

9.      Plaintiff asserts that Ford breached its sales contract with himself and each Class member by charging them for an upgraded radiator that Ford never supplied.

10      Plaintiff and the Class have suffered economic losses as a result of Ford's misconduct in breaching their sales contracts for which they seek compensatory damages as well as injunctive relief, declaratory relief and other equitable relief deemed just and proper by the Court.

## PLAINTIFF DAVID ZENO

11.     Plaintiff, David Zeno, purchased a new 2001 F-150 in May of 2001 from Lake View Ford in Conneaut, Crawford County, Pennsylvania. Lake View Ford is an authorized Ford dealer.

12.     Mr. Zeno's window sticker shows his 2001 F-150 included the "Trailer Towing Group, Class III" option for which he was charged $350.00. See Exhibit 1 hereto. While the "Trailer Towing Group, Class III" option was to have included an upgraded radiator, Mr. Zeno's F-150 does not have the upgraded radiator for which he paid.

13.     Ford breached its sales contract with Mr. Zeno by its failure to include the upgraded radiator in his F-150.

4

14.     Mr. Zeno has been damaged as a result of Ford's breach of its sales contract for his F-150 by failing to provide Mr. Zeno with the upgraded radiator for which he paid.

## CLASS ACTION ALLEGATIONS

15.     This class action is brought pursuant to Pennsylvania Rule of Civil Procedure 1701, *et seq.* on behalf of all persons who purchased or leased in the Commonwealth of Pennsylvania new model year 2000 or 2001 F-150 vehicles manufactured and/or sold by Ford Motor Company as having either a "Class III Trailer Towing Group" or the "Heavy-Duty Electrical/Cooling Group" options, but which were manufactured and/or sold with the stock or base radiator rather than the thicker upgraded radiator that was to be included with those options.

16.     Excluded from the Class are Ford's officers or directors who held those positions during the time the scheme alleged herein was employed by Ford, and any firm, trust or corporation in which such person has a controlling interest or which is related to or affiliated with such persons, and any legal representatives, heirs, successors-in-interest or assigns of any such excluded party.

17.     The Class is so numerous as to make joinder impracticable.  The exact number of Class members is unknown, but can be determined from records maintained by Ford.  It is believed that the Class contains thousands of members.  In many or most instances, Class members are unaware that they have claims.  Whether or not they are aware, however, their claims have damages in amounts that, while significant, when taken individually may be too small to justify the expense of a separate lawsuit; aggregated, however, they make litigation financially feasible.

18.     Each of the Representative Plaintiff's claims are typical of the claims he seeks to represent for the Class.  Representative Plaintiff will fairly and adequately represent the members of the Class who are victims of the same scheme or practice, and he has no interests that are antagonistic

to the claims of the Class. Thus, the Representative Plaintiff's interests in this action are antagonistic only to the interests of Ford, and the Representative Plaintiff will vigorously pursue the claims that he asserts on behalf of the Class.

19. The Representative Plaintiff has retained counsel who are competent and experienced in class action litigation, and who have represented other consumers and insureds in complex class action litigation. Counsel have agreed to handle this case on a contingent basis, with their compensation for professional services to be as awarded by the Court.

20. Common questions of law and fact affect the rights of each member of the Class and common relief by way of damages, injunctive relief, declaratory judgment and other equitable relief are sought for the Class.

21. Numerous and substantial questions of law and fact common to all members of the Class will control in this litigation and will predominate over any so-called individual issues. Among the numerous predominant common questions of law and fact with respect to the members of the Class are the following:

a. Whether Ford sold and contracted F-150's with Class III Trailer Towing Group or the Heavy-Duty Electrical/Cooling Group options as including an upgraded radiator.

b. Whether Ford delivered to Plaintiff and the Class F-150's that included the Class III Trailer Towing Group or the Heavy-Duty Electrical/Cooling Group options without the upgraded radiator.

6

c.      Whether Plaintiff and Class members paid for the Class III Trailer Towing Group or the Heavy-Duty Electrical/Cooling Group options that were to include an upgraded radiator, but received only a base or stock radiator.

d.      Whether Ford's conduct in failing to provide an upgraded radiator with its Class III Trailer Towing Group or the Heavy-Duty Electrical/Cooling Group options on its 2000 and 2001 F-150s breached its sales contracts with Plaintiff and the Class.

e.      Whether Plaintiff and the Class suffered economic losses as a result of Ford failing to provide them with an upgraded radiator, requiring compensatory damages, injunctive or declaratory relief or other equitable relief.

22.     A class action provides a fair, efficient and superior method, if not the only method, for adjudicating this controversy.  The substantive claims for the deceptive practice the Representative Plaintiff seeks to present for the Class are substantially the same and will require evidentiary proof of the same kind and application of the same law.

23.     The Representative Plaintiff will seek to identify all members of the Class through such discovery procedures as may be appropriate and will provide the Class with such notice of this action as the Court may direct.

## COUNT I
### (Breach of Contract)

24.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

7

25.     Plaintiff and the other Class members purchased or leased new 2000 or 2001 Ford F-150 vehicles at dealerships acting as authorized agents for Ford for the purpose of selling Ford vehicles directly to the public.  As evidenced by the invoices or window stickers, the sales contracts between Plaintiff and the Class and Ford show that these vehicles were purchased with the Class III Trailer Towing Group or the Heavy-Duty Electrical/Cooling Group options which included an upgraded radiator.

26.     Ford breached these sales contracts with Plaintiff and each Class member by not equipping any of these vehicles with the upgraded radiators.

27.     As a direct and proximate result of the foregoing conduct, Plaintiff and the Class members have suffered economic losses, warranting compensatory damages as well as injunctive relief, declaratory relief and other equitable relief deemed just and proper by the Court.

WHEREFORE, Plaintiff demands the following relief in excess of the arbitration jurisdictional limit on behalf of himself and all others similarly situated:

A.     An Order certifying this action as a plaintiff class action under Pennsylvania Rule of Civil Procedure 1701, *et. seq.* as set forth herein;

B.     Compensatory damages exceeding $25,000 and in such amount as the Court deems just and proper;

C.     Imposition of a constructive trust, a declaratory judgment, an Order granting rescissionary and injunctive relief, reformation, or such other equitable relief as the Court deems just and proper;

D.     An appropriate claims resolution facility to administer the relief in this case;

E.     Costs of litigation;

8

F.      Prejudgment interest; and

G.      Such other relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all Counts of this Complaint so triable.

Dated: February 24, 2005

SPECTER SPECTER EVANS
& MANOGUE, P.C.


By: _____
        Joseph N. Kravec, Jr.

The 26th Floor Koppers Building
Pittsburgh, Pennsylvania 15219
Telephone: 412-642 2300

*OF COUNSEL:*

Bruce D. Greenberg, Esquire
**LITE DEPALMA GREENBERG
& RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: 973-623-3000

*ATTORNEYS FOR PLAINTIFF*

E-1

**Ford**

VEHICLE DESCRIPTION
F-SERIES
LOW EMISSION VEHICLE

2001 F-150 4X4 SUPERCAB
XLT 139" WHEELBASE STYLESIDE
4.6L EFI V8 ENGINE
ELECTRONIC 4-SPD AUTO O/D

VIN  1FTRX18W1N  B13087

EXTERIOR
BLACK CLEARCOAT
INTERIOR
MED GRAPHITE 40/60 SPLIT 35

PRICE INFORMATION

STANDARD VEHICLE PRICE ........................ $24,600.00

OPTIONAL EQUIPMENT
SILVER CLEARCOAT MET ACENT
PREFERRED EQUIPMENT PKG 507A
ELECTRONIC 4-SPD AUTO O/D ......................... 1,095.00
P265/70R16 OWL ALL-TERRAIN ........................ NO CHARGE
3.31 RATIO REGULAR AXLE
8250# GVWR PACKAGE
ELECTRONIC SHIFT 4X4 ............................... 245.00
TRAILER TOWING GROUP CLASS III ...................... 350.00
EASY MOUNTING MIRRORS .............................. NO CHARGE
LOWER MOULDING PAINT ............................... 235.00

DISCOUNTED EQUIPMENT
AIR CONDITIONING EMP'D - FREE ...................... 805.00

TOTAL VEHICLE & OPTIONS ........................... 29,418.00
DESTINATION & DELIVERY

TOTAL BEFORE DISCOUNTS ............................ 30,433.00

A/C DISCOUNT ................................... -805.00
TOTAL SAVINGS ................................. -805.00

GTY MPG
**15**

Fuel Economy
Information

HIGHWAY MPG
**18**

Annual fuel cost...

2001 F150 PICKUP 4WD
4.6 LITER ENGINE (4.6L)
8 CYLINDERS, FUEL INJECTION,
CATALYST
4-SPD AUTO TRANSMISSION N

Estimated Annual Fuel Cost: $1256

For Conversion Shopping
of vehicles described as
STANDARD PICKUP

**Built Ford Tough**

TOTAL MSRP                    $29,625.00

1FTRX18W1NB13087   440 470   NORFOLK   KONYCT CA23   1A171 N X8 IX 130 006542 01 37 01

## VERIFICATION

The undersigned, DAVID ZENO, avers that the statements of fact contained in the attached CLASS ACTION COMPLAINT are true and correct to the best of his information, knowledge and belief, and are made subject to the penalties of 18 PA. CONS. STAT. ANN. §4904, relating to unsworn falsification to authorities.

**DAVID ZENO**

**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

CHARLES WILLIAMS, individually, and on
behalf of all others similarly situated,

        Plaintiff,

    v.

FORD MOTOR COMPANY, INC.

        Defendant.

No. _____

## AFFIDAVIT OF BRETT A. CASTLEBERRY

I, Brett A. Castleberry, state that if called to testify in this cause, among those things to which I would testify as to my own personal knowledge are the following:

1.    I am employed as a Recall Analyst in the Recall/Service Programs department of Ford Customer Service Division of Ford Motor Company ("Ford").

2.    I have been actively involved in the administration of Ford's Customer Satisfaction Program 01B83 (the "Program"). Under this Program, which operates worldwide, Ford has written to original owners and lessees of 2000 and 2001 F-150 trucks equipped with the Heavy Duty Electrical/Cooling Group or the Class III Trailer Towing Package that were sold before May 5, 2001, and offered them a choice of one of three options, as summarized here and further described in the attachments:

    A.    $100 cash in the form of a check
    B.    $500 Owner Loyalty Certificate toward the purchase of a new Ford vehicle
    C.    Free installation of a larger radiator.

3.    A document describing the Program was distributed by Ford to its dealers on or about October 4, 2001, by posting it on the QCDealer website. The QCDealer website is Ford's

primary method for communicating information of this type to dealers.  Attachment A to this affidavit is a copy of the letter, as a printout from the website.

4.      Ford mailed letters to customers who purchased or leased 2000-2001 F-150 trucks that were equipped with the Heavy Duty/Electrical Cooling Group or the Class III Trailer Towing Package that were sold before May 5, 2001 advising these customers of the Program. Attachment B to this affidavit is a sample of the letter.

5.      Letters advising customers of the Program were mailed beginning on Friday, November 2, 2001.  Letters have been sent to affected customers who purchased their vehicles in South Carolina.

6.      As of June 4, 2002, Ford has received 228,834 responses to these letters regarding the Program.  Of these responses, 182,616 customers selected the $100 check, 24,247 customers, selected the $500 Owner Loyalty Certificate (applicable to the purchase of a new Ford vehicle), and 21,726 have chosen the radiator modification/replacement option.  Another 170 customers responded to the offer, but did not clearly indicate which option they preferred.  Ford is following up with these customers to clarify their choices. Ford is in the process of reissuing 75 checks to customers who lost their checks or who's mailing address was incorrect.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this fourth day of June, 2002 in Allen Park, Michigan.

_____          6/4/02
Brett A. Castleberry                                  Date

_____  Notary Public   Oakland, acting          11/16/05
Notary Signature                                in Wayne, Michigan
                                                         County          Commission Expires

MICHAEL J. O'REILLY
Notary Public, Oakland County, Michigan
Acting in ___Wayne___ County, Mich.
My Commission Expires November 16, 2005.

| CUSTOMER SATISFACTION PROGRAM 01B83 | Certain 2000 and 2001 F-150 Model Vehicles with Heavy Duty Electrical/Cooling Group - Publications Error |

*Ford Motor Company*

A. R. O'Neil
Director
Vehicle Service and
Programs
Ford Customer Service
Division

Ford Motor Company
P.O. Box 1904
Dearborn, Michigan 48121

October 2001

**TO:**    All Ford and Lincoln Mercury Dealers

**SUBJECT:**    Customer Satisfaction Program 01B83 - Certain 2000 and 2001 F-150 Model Vehicles with Heavy Duty Electrical/Cooling Group - Publications Error

**PROGRAM TERMS:**

- OPTION 1: $100 Check (sent directly to the customer) - Valid for 60 days from the date of check issuance
- OPTION 2: $500 Owner Loyalty Certificate (OLC) - Valid until December 31, 2002 (Transferable only to family members in the owner's household)
- OPTION 3: Radiator Modification - Valid for 60 days from the date of voucher issuance

REF: Dealer Announcement dated May 10, 1999, Low Volume Programs

**AFFECTED VEHICLES**

Certain 2000 through 2001 model year F-150 vehicles equipped with the Heavy Duty Electrical/Cooling Group (Option Codes 531 and 535) not including the 7700 lbs payload group option (option code 627). Only vehicles currently owned/leased by the original owner/lessee who purchased or leased their vehicle prior to May 5, 2001, are affected by this program. These vehicles were built at the following locations:

- Norfolk Assembly Plant
- Kansas City Assembly Plant
- Ontario Truck Assembly Plant
- Cuautitlan Assembly Plant

**REASON FOR THIS CUSTOMER SATISFACTION PROGRAM**

The sales literature produced for the affected vehicles contained an error. The error incorrectly described F-150 vehicles with the Heavy Duty Electrical/Cooling Group option as including an "upgraded" radiator. Engineering specifications require super-cooling capability for these vehicles and an "upgraded" radiator was not necessary to meet these requirements. In the interest of customer and dealer satisfaction, Ford Motor Company has decided to take action in the form of Customer Satisfaction Program 01B83. All sales literature in print and on the Internet was corrected on May 5, 2001.

**Attachment A**

## OPTIONS OFFERED TO CUSTOMERS

Original customers who still own or lease the affected vehicles will be sent a letter that outlines the concern and the details of the program. Customers can select one (1) of the following options:

- Option 1 - Cash the $100 check enclosed in the customer letter
- Option 2 - Return the check to F-150 Program Headquarters and in return, the customer will receive a $500 Owner Loyalty Certificate (OLC) for the purchase of a new Ford car or truck. OLC Program Number 3228 (Lincoln Mercury vehicles excluded)
- Option 3 - Return the check to Radiator Program Headquarters and in return, the customer will receive a voucher for radiator replacement. The voucher, which includes the customers name, address and VIN, will be sent to the customer when a radiator is available for their vehicle

## SERVICE ACTION REQUIRED FOR CUSTOMERS WHO CHOOSE OPTION 3

For customers who choose Option 3, dealers will install a 36mm, 7700 Lbs Option Package radiator in-place of the 26mm radiator specified for this application.

NOTE: Since the radiators currently installed in these vehicles meet Ford Motor Company's engineering criteria for super-cooling, the modification to install the 36mm 7700 Lbs Option Package radiator in included vehicles is not required for any climate, nor does it increase the vehicles payload or towing capacity. Because the 7700 lb. Payload Group radiator is produced in limited quantities, there is a potential that the customer may be required to wait several months before a replacement radiator is available.

## OPTION 3 HANDLED AS LOW VOLUME PROGRAM

Option 3 of this Customer Satisfaction Program is being processed as a Low Volume Program. This type of field action was announced in an All-Dealer letter dated May 10, 1999.

Owners who choose Option 3 will return the check to Radiator Program Headquarters. Radiator Program Headquarters will issue a radiator modification voucher when a radiator is available. Once the customer receives the voucher they will be instructed to contact the Program Coordination Center to arrange for this service. We will advise you via the Customer Data Link (CuDL) of the customers that chose your dealership to perform the service provided by this Customer Satisfaction Program. Parts will be ordered for you by the Program Coordination Center. Once receiving notification, you are requested to contact the customer and arrange for this service. (Note: the Program Coordination Center will advise customers that they will hear from you, the dealership, within the next two business days).

## ATTACHMENTS

Attachment I: Administrative Information
Attachment II: Labor Allowances and Parts Ordering Information
Attachment III: Technical Information

## QUESTIONS?

Claims Information: .......................................................... 1-800-423-8851
Special Service Support Center.......................................... 1-800-325-5621
F-150 Radiator Program Headquarters
(For questions regarding options): .................................... 1-800-248-6674

Sincerely,

Ann O'Neill
Director
Vehicle Service and Programs

---

CPR © 2001 FORD MOTOR COMPANY
Published By: Recall/Service Programs Department
Ford Customer Service Division



**Attachment B**



**COOL COMPENSATION**

**For the hottest truck on the road.**

PAY
$100 Hundred and 00/100 Dollars

TO THE
ORDER OF

AMOUNT
$100.00

VOID IF NOT CASHED WITHIN 90 DAYS

Ford Motor Company.

Yes, I do not accept this check but wish to select the offer checked below:

$300 Owner
Loyalty Certificate

7 70-lb. Payload
Gross Reducer

EXHIBIT "C"

Case 2:05-cv-00418-JFC   Document 1   Filed 03/28/05   Page 31 of 35





## BLUE BOOK RETAIL REPORT
Pennsylvania • March 28, 2005

## 2001 Ford F150 Super Cab Short Bed 4D



Search Listings for This Car
Free CARFAX Record Check
Auto Loans from 4.49% APR
Insurance Quote
Payment Calculator

**Engine:** V8 4.6 Liter
**Trans:** Automatic
**Drive:** 2 Wheel Drive
**Mileage:** 59,000

**Equipment**

| | |
|---|---|
| XL | Cassette |
| Air Conditioning | Dual Front Air Bags |
| Power Steering | ABS (4-Wheel) |
| AM/FM Stereo | |

**Retail Value**    Search Local Listings for This Car    **$13,165**

The Kelley Blue Book Suggested Retail Value is representative of dealers' asking prices and is the starting point for negotiation between a consumer and a dealer. This Suggested Retail Value assumes that the vehicle has been fully reconditioned and has a clean title history . This value also takes into account the dealers' profit, costs for advertising, sales commissions and other costs of doing business. The final sale price will likely be less depending on the vehicle's actual condition, popularity, type of warranty offered and local market conditions.

Get Invoice & MSRP on New Cars

Get a Private Party Value

Get Financing Before You Shop



Copyright © 2005 by Kelley Blue Book Co., All Rights Reserved. Mar-Apr 2005 Edition. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This report is intended for the individual use of the person generating this report only and shall not be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for errors or omissions.(v.05034)

## CERTIFICATE OF SERVICE

I, Nancy R. Winschel, Esquire, hereby certify that true and correct copies of the foregoing Notice of Removal have been served this _28_ day of March, 2005, by U.S. first-class mail, postage pre-paid, to counsel of record listed below:

Joseph N. Kravec, Jr., Esquire
Specter Specter Evans & Manogue, P.C.
The 26th Floor
Koppers Building
Pittsburgh, PA 15219

DICKIE, McCAMEY & CHILCOTE, P.C.

By _____
Nancy R. Winschel, Esquire

Attorneys for Ford Motor Company

JS-44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

David Zeno, on behalf of himself and all others similarly situated,

**DEFENDANTS**

Ford Motor Company

05 0418

**(b)** County of Residence of First Listed Plaintiff   Allegheny
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Out-of-State
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Joseph N. Kravec, Jr., Esquire
Spector Spector Evans & Manogue, P.C.
26th Floor, Koppers Building, Pittsburgh, PA
15219

Attorneys (If Known)

Nancy R. Winschel, Esquire
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222   412-281-7272

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug |  | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws |  | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act |  | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights |  |  |
|  |  | ☐ 555 Prison Condition |  |  |

Under PERSONAL INJURY / PERSONAL PROPERTY column:
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability
- **PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Under LABOR column:
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity)

Removal of diversity action pursuant to 28 U.S.C. Sections 1332 and 1446

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE

DOCKET NUMBER

DATE  3/28/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| (b) County of Residence of First Listed Plaintiff _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☐ 2  U.S. Government
       Defendant

☐ 3  Federal Question
       (U.S. Government Not a Party)

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>      & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>      Student Loans<br>      (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>      of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>      Liability<br>☐ 320 Assault, Libel &<br>      Slander<br>☐ 330 Federal Employers'<br>      Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>      Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>      Product Liability<br>☐ 360 Other Personal<br>      Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>      Med. Malpractice<br>☐ 365 Personal Injury -<br>      Product Liability<br>☐ 368 Asbestos Personal<br>      Injury Product<br>      Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>      Property Damage<br>☐ 385 Property Damage<br>      Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>      of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>      Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>      28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>      Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>      Exchange<br>☐ 875 Customer Challenge<br>      12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>      Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>      Employment<br>☐ 446 Amer. w/Disabilities -<br>      Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate<br>      Sentence<br>      **Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards<br>      Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br>      & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>      Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>      or Defendant)<br>☐ 871 IRS—Third Party<br>      26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>      Act<br>☐ 900Appeal of Fee Determination<br>      Under Equal Access<br>      to Justice<br>☐ 950 Constitutionality of<br>      State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      another district
      (specify)

☐ 6 Multidistrict
      Litigation

☐ 7 Appeal to District
      Judge from
      Magistrate
      Judgement

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN    COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S)    IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____