**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID ZENO, individually, and on                    )
behalf of all others similarly situated,            )
                  Plaintiff,   )
                                               )
  v.                                                )  Civil Action No. 05-418
                                               )
FORD MOTOR COMPANY, INC.,                           )
                  Defendant.   )
                                             )

## <u>MEMORANDUM OPINION</u>

CONTI, District Judge.

      In this memorandum opinion, the court considers the motion for summary judgment, (Doc. No. 49), filed by defendant Ford Motor Company, Inc. ("defendant" or "Ford") with respect to the breach of contract claim asserted against defendant by plaintiff David Zeno individually and on  behalf of all others similarly situated ("plaintiff" or "Zeno").  The court granted plaintiff's motion for class certification on September 27, 2006, (Doc. No. 82), and certified the above-captioned civil action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), finding that all of the Rule 23(a) prerequisites for certification were met, that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  See FED.R.CIV.P.

23(b)(3).[1]

After considering the joint statement of material facts and the respective submissions of the parties, the court will deny defendant's motion for summary judgment with respect to the arguments concerning causation and damages.  The court will deny without prejudice defendant's motion for summary judgment with respect to the arguments concerning agency and will permit plaintiff to pursue discovery on this issue as requested in the Rule 56(f) affidavit, for the reasons set forth herein.

### *Factual Background*

The factual background of this case was reviewed in connection with the motion for class certification in order to decide whether the Rule 23 requirements were met and whether this case could proceed as a class action.  See September 27, 2006 Order Certifying the Class (Doc. No. 82)("class certification opinion") at 2-19.  The parties are familiar with the factual background set forth in the class certification opinion.  That factual background overlaps with the factual background reviewed for this opinion and is incorporated in this opinion by reference.  As necessary, additional facts relevant to the motion for summary judgment will be addressed.[2]

---

[1]Defendant sought a stay of the proceedings in connection with defendant seeking Rule 23(f) appellate review of the court's certification order.  See (Doc. No. 83)(Defendant's Motion to Stay Proceedings to file a petition pursuant to  Fed. R. Civ. P. 23(f)).  The court granted the motion to stay with respect to sending out notice to potential class members pending appellate review, but has not stayed discovery in the case or the preparation of a form of class notice.  See Transcript of November 7, 2006 Hearing on Defendant's Motion to Stay.

[2]The standard of review for deciding a motion for class certification is different from the standard of review for deciding a motion for summary judgment.  See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir. 2001)(discussing the appropriate standard of review for deciding a certification motion); see also In re Initial Public Offering

_____

Securities Litig., 471 F.3d 24 (2d Cir. 2006)(same); Gariety v. Grant Thornton, LLP, 368 F.3d 356 (4th Cir. 2004)(same); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672 (7th Cir. 2001)(same).  In deciding a motion for class certification a district court engages in "rigorous analysis" of the factual record before it.  See id.; see also General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982) (holding that district courts must apply a "rigorous analysis" to determine whether plaintiffs have shown that the requirements of Rule 23 have been met).  That "rigorous analysis," however, does not include making findings of fact which control resolution of the ultimate merits of the case, even if there is some overlap of class certification issues and issues necessary to resolve the merits:

> Thus, while an evaluation of the merits to determine the strength of plaintiffs' case is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits.  [Eisen v. Carlisle & Jacquelin, 417 U.S. 154 (1974)]'s prohibition against assessing plaintiffs' likelihood of success on the merits as part of a Rule 23 certification does not mean that consideration of facts necessary to a Rule 23 determination is foreclosed merely because they are required to be proved as part of the merits. The analysis under Rule 23 must focus on the requirements of the rule, and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental. The findings made for resolving a class action certification motion serve the court only in its determination of whether the requirements of Rule 23 have been demonstrated.

Gariety, 368 F.3d at 365 (emphasis added).

In cases like this one, however, where the court allowed controlled discovery into class certification issues, the factual record before the court at the time it decided certification was relatively well-developed.  See Advisory Committee Notes concerning 2003 amendments to Rule 23 (noting that discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial).  The factual record developed at that time was reviewed by this court in order to decide the motion for class certification.  See (Doc. No. 82)(class certification opinion) at 1-19.

The court and the parties are familiar with the factual record created and submitted to the court for the purpose of deciding the motion for class certification.  The court reviews the pending motion for summary judgment filed by defendant with that factual background in mind, as supplemented by the statements of material facts and supporting exhibits filed by the parties for the purpose of deciding defendant's pending summary judgment motion.  In consideration of defendant's motion, of course, the court will apply the appropriate standard for reviewing the factual record for the purposes of summary judgment.  See infra (discussing the standard of review).

3

A brief recitation of the pertinent facts relevant to defendant's summary judgment motion, however, will frame the background requisite for a determination of the issues raised in the motion for summary judgment. As discussed in the class certification opinion, plaintiff purchased a new Ford F-150 truck in May 2001 from Lake View Ford in Conneaut Lake, Pennsylvania. Defendant's Joint Concise Statement of Material Facts ("Def.'s S.F.") ¶ 1; Def.'s S.F. Ex. A (purchase agreement – document P0020). Plaintiff and an authorized representative of Lake View Ford signed the purchase agreement related to the sale. Def.'s S.F. Ex. A (purchase agreement). The purchase agreement specified, inter alia, plaintiff's name, address and other details, the vehicle identification number (commonly known as the "VIN") of the vehicle he purchased, insurance information, warranty information, and pricing for the vehicle. Id. It reflected that the "cash price of the vehicle and accessories" was $29,125.00, $500.00 less than the Manufacturer's Suggested Retail Price ("MSRP"). Id.; see also Def.'s S.F. Ex. B (window sticker). The purchase agreement did not specify the details of the options included on the vehicle. Id.

At or around the time of the sale, plaintiff received a window sticker corresponding to the vehicle that he purchased. Def.'s S.F. Ex. B (plaintiff's window sticker). The window sticker listed the VIN, the MSRP, the vehicle description, fuel economy information, the standard equipment on the vehicle, and price information for optional equipment included on the vehicle. Id. The window sticker for plaintiff's F-150 truck indicated, among other things, that his vehicle included a Class III Trailer Towing Group option (the "towing option"). Id. The window sticker showed that the total MSRP for plaintiff's F-150 truck was $29,625.00 and that this total MSRP included a MSRP of $350.00 for the towing option. Id. The window sticker did not specify the

component parts of the towing option – in particular, it did not specify the type of radiator installed in the vehicle.  Id.

Plaintiff produced evidence which indicates that the towing option and another option package that was a component of the towing option, the Heavy Duty Electrical/Cooling Group option (the "cooling option"), were to include, among other things, an upgraded radiator which was 1.42" thick –  .40" thicker than the regular radiator.  See generally (Doc. No. 82)(class certification opinion) at 1-19; Plaintiff's Counter-Statement of Material Facts ("Pl.'s S.F.") ¶¶ 8-26.  This evidence includes, among other things, internal Ford pricing documents, materials distributed by Ford to dealerships, and a report describing communications to Ford from its radiator supplier Visteon Climate Control Systems notifying Ford on September 29, 2000, that all Ford F-150 trucks equipped with the towing option and cooling option built since August 2, 1999, mistakenly had been built with the "standard radiator" instead of the "upgraded radiator described in the ordering guide," and analyzing the consequences of this information.[3]

The gravamen of plaintiff's class action complaint alleging breach of contract is the allegation that plaintiff and other members of the class who purchased or leased a 2000 or 2001 model year F-150 truck manufactured by defendant Ford which was supposed to include the towing option or cooling option were charged for the upgraded radiator when they paid for those

---

[3]See Deposition of David Lenz ("Lenz Dep."), Ex. 3 ("Field Service Evaluation Paper (14D) Transmittal" (the "14D Report")).  The 14D Report was prepared by  Ford's manager of global core engineering, who was responsible for vehicle cooling.  Id.  Its subject line indicates that the report concerns "2000-01 MY F150 **Wrong Radiator** – Class III Trailer Tow Opt."  Id. (emphasis added).

options but received vehicles that were built with a standard radiator instead.[4]

Defendant's motion for summary judgment raises arguments disputing plaintiff's ability to establish damages, to show causation, and to establish the existence of a contract with Ford. With respect to plaintiff's ability to establish the existence of a contract with Ford, defendant argues that there is no genuine dispute as to any material fact concerning plaintiff's inability to show Ford was in contractual privity with plaintiff.  Defendant argues that plaintiff cannot show an agency relationship between Ford and Lake View Ford, the dealership where plaintiff purchased his vehicle.  Facts relevant to these arguments, including the facts that overlap with the facts set forth in the class certification opinion, will be described in more detail below.

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a

---

[4]The class definition excludes anyone who received a replacement 1.42" radiator thereafter, for example, as part of Ford's customer satisfaction program.

reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court may

consider any material or evidence that would be admissible or usable at trial in deciding the

merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing

WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35,

39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert. denied, 355 U.S. 964 (1958) ("[I]n

considering a motion for summary judgment, the court is entitled to consider exhibits and other

papers that have been identified by affidavit or *otherwise made admissible in evidence*")

(emphasis added)(citations omitted).

  The Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), held that

"where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'"  Id. at 324 (quoting

FED.R.CIV.P. 56(c)).  "Such a motion, whether or not accompanied by affidavits, will be 'made

and supported as provided in this rule,' and Rule 56(e) therefore requires the nonmoving party to

go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  Id. (quoting FED.R.CIV.P. 56(c) and (e)).  The nonmoving party must prove

beyond a "mere scintilla" of evidence that a genuine issue of material fact exists and may not rest

on the allegations set forth in its pleadings.  See Big Apple BMW v. BMW of N. Am., 974 F.2d

1358, 1363 (3d Cir. 1992).

*Discussion*

Defendant primarily raises three arguments in favor of its position that the undisputed evidence of record demonstrates that plaintiff cannot establish the required elements of his breach of contract claim and that summary judgment in defendant's favor, therefore, is appropriate in this case.  First, defendant argues that plaintiff did not suffer any damages as a result of the alleged breach of contract.  Second, defendant argues that plaintiff cannot demonstrate causation under Pennsylvania law.  Third, defendant argues that plaintiff cannot demonstrate the existence of a contract with defendant Ford, or that any term of any agreement with Ford promised him a so-called "radiator upgrade."

Plaintiff argues that defendant's motion for summary judgment should be denied because material issues of fact exist regarding plaintiff's breach of contract claim or alternatively that consideration of summary judgment at this time is premature because plaintiff has not yet had the opportunity to complete discovery with respect to issues raised in the motion.

Plaintiff filed a Rule 56(f) affidavit setting forth the additional discovery plaintiff believes that he needs.  See (Doc. No. 69)("FRCP 56(f) Affidavit by Joseph N. Kravec, Jr., Esquire in Response to Defendant's Motion for Summary Judgment")(the "Rule 56(f) affidavit"); see also Fed.R.Civ.P. 56(f)("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just").

In the Rule 56(f) affidavit, plaintiff set forth his position that based on the current record there is enough evidence to show that genuine issues of material fact exist for a jury to resolve as to each of defendant's summary judgment grounds, and therefore, that the record is sufficient for the court to deny summary judgment in defendant's favor at this time.  In the alternative, however, plaintiff requested that if the court were inclined to find that the current record does not present sufficient evidence to justify denial of defendant's motion, plaintiff be allowed to complete specific discovery set forth in the affidavit in order fully to contest the grant of summary judgment in defendant's favor.  See (Doc. No. 69)(listing, inter alia, discovery into pricing attributable to the radiator, any reductions in market value once Ford made public that the towing options did not contain the upgraded radiator, and facts related to the contractual relationship between Ford and Lake View Ford concerning privity and agency).  Defendant opposed plaintiff's request for additional discovery on various grounds.  See (Doc. No. 76).

The court finds that plaintiff has adduced sufficient evidence with respect to defendant's arguments concerning damages and causation to make granting summary judgment on those grounds unwarranted.  The court, however, finds that with respect to the fiercely disputed issue of agency, a decision on summary judgment based upon plaintiff's ability to establish agency is premature at this time.  The court will address each of defendant's arguments raised in the summary judgment motion, and plaintiff's responses, in turn.[5]

At the outset, it is helpful to note that plaintiff asserts a garden-variety breach of contract

---

[5]Defendant's damages and causation arguments are somewhat conflated in the briefing. While these issues are in fact intertwined in some respects, they are two separate questions: first, whether, as a threshold matter, there are damages and second, if so, were those damages caused by the alleged breach.

claim, and not an express warranty claim, as some of defendant's arguments seem to presuppose. Plaintiff's claim as asserted – that Ford charged him for an upgraded radiator that it never provided to him – must rise or fall as a breach of contract claim.[6]

## I. Whether Plaintiff Suffered Damages from the Alleged Breach of Contract

Defendant points broadly to two kinds of evidence in support of its theory that plaintiff cannot establish damages even if he can show a breach of contract: (1) evidence related to the trade-in value of the F-150;[7] and (2) evidence relating to the price and the functionality of the F-

---

[6]While some of plaintiff's arguments implicate issues of unjust enrichment, the court notes that plaintiff is not directly raising the quasi-contractual theory of liability known as unjust enrichment. See Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000)("Unjust enrichment is . . . an equitable doctrine[, with the following elements:] benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.")(quoting 16 SUMMARY OF PA.JUR.2D COMMERCIAL LAW § 2.2 (1994) (internal quotations omitted)); see also RESTATEMENT OF RESTITUTION § 1 ("Unjust Enrichment")("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."); RESTATEMENT (SECOND) OF CONTRACTS, Topic 4 ("Introductory Note" on Restitution) at 199-200 and §§ 370-77.

[7]With respect to this kind of evidence, defendant identifies undisputed facts in the record showing that plaintiff later traded in his F-150 for the purchase of a Chevrolet truck and negotiated a trade-in value of $17,500 for the F-150.  Deposition of David Zeno ("Zeno Dep.") at 34-37.  Plaintiff testified in his deposition that he believed that he got a "fair" trade-in value on the F-150.  Id. at 39.  He testified that he did not know whether he received a lower trade-in value for the F-150 due to the radiator's size.  Id. at 40- 42, 64-65.  Plaintiff admits that he traded in the F-150 for the Chevrolet truck for this amount, but denies that the trade-in amount he received fairly and accurately reflected the truck's options and aftermarket additions and that it was not reduced due to the size of the F-150 radiator.  Def.'s S.F. ¶17 (Pl.'s Resp.); see Zeno Dep. at 40-42, 64-65.  Plaintiff, however, argues that the trade-in amount he received is irrelevant to his breach of contract claim that he paid for an upgraded radiator that he never received.  Def.'s S.F. ¶17 (Pl.'s Resp.).

150.[8]  Defendant argues that these facts show that plaintiff cannot prevail on his breach of

contract claim because doing so requires showing damages, and the evidence of record – and, in

particular, plaintiff's own testimony – shows that he has not suffered any damages.

Plaintiff responds that these arguments are without merit.  Plaintiff offers three ways that

he could prove damages: (1) proving nominal damages, (2) proving actual damages by

calculating actual damages from the base MSRP and actual sale price, or (3) proving actual

damages based upon Ford's admission through its customer satisfaction program.  First, under

Pennsylvania law, plaintiff argues that if he prevails on his breach of contract claim he would be

entitled at the very least to nominal damages.[9]  Plaintiff argues that he has adduced sufficient

evidence to survive summary judgment on his breach of contract claim.

Second, plaintiff argues that he has adduced some evidence of actual damages thus far.

For example, plaintiff points to Ford documents suggesting that at least $98.00 of the $350.00

---

[8]Defendant draws the court's attention to undisputed facts in the record showing that plaintiff paid $500.00 less than the MSRP on the F-150 – and this difference is greater than the listed value of the towing option ($350.00).  Zeno Dep. at 26; Def.'s S.F. Ex. B (plaintiff's window sticker).  Further, plaintiff testified that he generally was satisfied with the performance of the F-150, which "[a]bsolutely" provided him with reliable transportation.  Id. at 44-45.  Plaintiff testified that during the period that he owned the F-150, he never towed anything with it, he never experienced any problems with its  radiator, he never experienced any engine overheating, and the truck's temperature gauge never registered in the red zone.  Id. at 44-46.  Plaintiff admits that he was generally satisfied with the performance of the F-150, but argues that this is irrelevant to his  breach of contract claim that he paid for an upgraded radiator that he never received.  Def.'s S.F. ¶17 (Pl.'s Resp.).

[9]Pennsylvania law recognizes nominal damages.  See Scobell, Inv. v.Schade, 688 A.2d 715, 719 (Pa. Super. 1997) (quoting Aiken Industries, Inc. v. Estate of Wilson, 383 A.2d 808, 811-812 (Pa. 1978))( "[A]ny breach of contract entitles the injured party to at least nominal damages."); see also Nicholas v. Pennsylvania State University, 227 F.3d 133 (3d Cir. 2000)(Alito, J.)(recognizing nominal damages are available under Pennsylvania law).

MSRP for the towing option was attributable to the "upgraded radiator" or 1.42" thick radiator, and that applying a percentage discount method of calculation, plaintiff can demonstrate what amount plaintiff was charged for the upgraded radiator he did not receive even taking into account the $500.00 discount he received from Lake View Ford on the vehicle. Third, plaintiff argues that he could more fully demonstrate actual damages at trial once discovery is completed. Plaintiff adduced evidence that Ford offered some, but not all, affected F-150 customers compensation (i.e., a $100.00 check, a $500.00 coupon, or installation of an updated radiator) when Ford learned that F-150 vehicles with the towing or cooling options did not contain the 1.42" radiator. Plaintiff argues that this evidence constitutes Ford's own admission that some damages resulted to F-150 owners like plaintiff who did not receive the 1.42" radiator. From this, plaintiff argues that once full discovery is completed, plaintiff will be able to show the actual damages caused by the alleged breach.

It is elementary that a plaintiff asserting a breach of contract claim under Pennsylvania law must "establish [three] elements: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super.Ct. 1999). "To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" Id. at 225-26 (quoting ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659, 668 (3d Cir.1998)). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." Id. (quoting ATACS Corp., 155 F.3d at 669 (quoting Spang & Co. v. United States Steel Corp., 519 Pa. 14, 545 A.2d 861, 866 (1988))). The

12

court of appeals in <u>Ware</u> explained that under Pennsylvania law some uncertainty with respect to

the amount of damages would not defeat a claim:

> "It is true . . . that the Pennsylvania law of contracts allows for
> some uncertainty in calculating damages . . . ." <u>ATACS Corp.</u>, 155
> F.3d at 670.  However, "[w]hile mathematical certainty is not
> required, the plaintiff must introduce sufficient facts upon which
> the jury can determine the amount of damages without conjecture."
> <u>Delahanty v. First Pennsylvania Bank, N.A.</u>, 318 Pa.Super. 90, 464
> A.2d 1243, 1257 (1983); <u>see</u> <u>also</u> <u>Scully v. U.S. WATS, Inc.</u>, 238
> F.3d 497, 515 (3d Cir.2001). After years of discovery, Plaintiff . . .
> has failed to present evidence upon which the factfinder could base
> a damages calculation to a reasonable certainty.

<u>Id</u>.[10]

As discussed in more detail below, plaintiff may be able to adduce sufficient evidence to

survive summary judgment on his breach of contract claim with respect to the existence of a

contract and breach.  In light of the law of Pennsylvania allowing nominal damages for a breach

of contract, summary judgment cannot be granted for failure to show damages.  Even more

tellingly, defendant's arguments that plaintiff cannot demonstrate any identifiable actual damages

challenge the fact of actual damages rather than the amount and viewing disputed evidence in the

light favorable to plaintiff, as the nonmoving party, summary judgment cannot be granted.

Specifically, plaintiff argues that actual damages could be calculated based upon the

MSRP for the upgraded radiator, notwithstanding that plaintiff negotiated a $500.00 discount on

---

[10]In <u>Ware</u>, the United States Court of Appeals for the Third Circuit affirmed the district
court's dismissal of a breach of contract claim because plaintiff's "last-minute submission of an
incomplete and unsupported damages calculation merited exclusion of the evidence and
dismissal  of the breach of contract claim."  <u>Id</u>. at 226-27.  In the alternative, the court of appeals
noted that "[i]n any event, [plaintiff] did not introduce evidence upon which a factfinder could
calculate damages with reasonable certainty, thus supplying yet another reason that the District
Court did not abuse its discretion in dismissing the breach of contract claim."  <u>Id</u>. at 227.

the entire vehicle.  See In re Flat Glass Antitrust Litigation, 191 F.R.D. 472, 486 (W.D.Pa. 1999)("[E]ven though some plaintiffs negotiated prices, if plaintiffs can establish that the base price from which these negotiations occurred was inflated, this would establish at least the fact of damage, even if the extent of the damage by each plaintiff varied.")(antitrust class action).

In addition, plaintiff argues that the functionality of the vehicle is irrelevant to plaintiff's breach of contract claim.  Plaintiff's claim for damages is predicated on the theory that he paid a price for the vehicle that included a towing package and upgraded radiator and he received a vehicle without an upgraded radiator.  Relatedly, plaintiff argues that his claim does not fail, as defendant argues, because some of his testimony suggested that he purchased the vehicle without regard to the kind of radiator that it had.[11]  Plaintiff argues that the law is clear that a plaintiff needs neither to have read nor to have been aware of all of the terms of a contract in order to be bound by it and entitled to its benefits.  See Klingman v. Advanced Polymer System, Inc., 2001 WL 1173998, *3 n. 4 (E.D. Pa. 2001)("[T]he failure of a literate adult to read a contract or a decision by him to sign in haste without understanding the terms does not alter the enforceability of the contract.")(citing Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 900 (3d Cir.1981); Simeone v. Simeone, 581 A.2d 162, 165 (Pa.1990); Thrasher v. Rothrock, 105 A.2d 600, 604 (Pa.1954)).  In addition, as the court and the parties discussed at the hearing on class certification, a consumer who purchases something with multiple component parts – like a vehicle or a dishwasher – does not need to address and assent to each component part or widget making up the item purchased or expressly to assent to its inclusion, or base the decision to

---

[11]Defendant points to plaintiff's testimony that he "most likely" would have purchased the vehicle without the towing group; and that he cannot recall any specific mention of the radiator at the time of purchase or during the negotiations.

14

purchase on its inclusion, to be entitled to receiving an item that includes each essential
component part.  Here, the contract, if there is one, included the term that the vehicle plaintiff
received included the towing option.  See RESTATEMENT (SECOND) CONTRACTS § 5 ("Terms of
Promise, Agreement, or Contract") (". . . . (2) A term of a contract is that portion of the legal
relations resulting from the promise or set of promises which relates to a particular matter,
whether or not the parties manifest an intention to create those relations."), cmt. A ("Agreed
terms")("The terms of a promise or agreement are those expressed in the language of the parties
or implied in fact from other conduct. . . .").

In addition, plaintiff points to his testimony that it was important to him to receive all the
options he paid for in support of the notion that he was damaged when the wrong radiator was
included in his vehicle.  He did not separately consider every component part of the towing
option when he purchased the vehicle:

> Q. Okay. Now, sir is it important to you that you receive what you
> paid for?
>
>           . . . .
>
> A. It's always important to me, no matter what I buy, that I get
> what I paid for.
>
> Q. And specifically with regard to the F-150 that you purchased
> and the class three trailer towing package, was it important to you
> that you received all of the components that package included if
> you paid for them?
>
> A. It is exceedingly important on that because if you recall the
> conversation we had about how I bought the truck, that I paid more
> for this truck than the original one because it had this towing
> package, so it would have been very critical that I get the whole
> package.

Zeno Dep. at 63.  Plaintiff argues that this testimony establishes that though plaintiff was unaware at the time of purchase that the towing package included an upgraded radiator plaintiff, like any reasonable consumer, expected to receive what he paid for.  In the universe of breach of contract – and not warranty – the issue is whether there was an obligation to deliver a vehicle to plaintiff with an upgraded radiator, not whether there was an express or implied warranty to deliver this particular component part.

Finally, plaintiff argues that what plaintiff received on his trade-in of the F-150 is also irrelevant.  If he had not paid for the upgraded radiator as part of the towing package, his cost for the F-150 would have been lower.  If the trade-in value was affected by the lack of the upgraded radiator – which cannot be ascertained on the record before the court – then plaintiff would have received a higher value at trade-in if the vehicle had the upgraded radiator and damages could potentially be calculated with reference to this amount.  On the other hand, if the trade-in value was not affected by the lack of the upgraded radiator, then plaintiff argues that because he paid more for the F-150 in the first place, the net value for his trade-in would have been higher.

Defendant contends that plaintiff is trying to create an issue of material fact by suggesting that $98.00 of the $350.00 MSRP for the towing option can be attributed to an upgraded radiator. Defendant argues that this argument is unavailing because as Ford's corporate designee testified, the significance of the $98.00 amount, if there is any, lies in its significance for functionality – not for any specific component part.  The court understands that one of defendant's theories in its defense is that plaintiff and other affected purchasers who received the standard radiator when they purchased the towing and cooling options still received "super engine cooling" functionality regardless of the thickness of the radiator installed on their vehicles.  Functionality, however, is

not in issue with respect to this breach of contract claim.  The disputed evidence viewed in the light most favorable to the nonmoving party – plaintiff –  supports plaintiff's claim that he paid for a radiator that he did not receive.  Whether nominal damages or some actual damages should be awarded is a matter to be determined by a jury if the case proceeds to trial and, on the record before the court, cannot be determined at this time.

In sum, summary judgment cannot be granted in favor of defendant with respect to plaintiff's ability to prove actual damages at trial. There are genuine issues of material fact for a jury to resolve with respect to whether plaintiff suffered damages and, if so, in what amount. Based upon the undisputed evidence of record and viewing the disputed evidence in the light most favorable to plaintiff, the court concludes that a reasonable trier of fact could find that plaintiff adduced sufficient evidence with respect to damages.  Defendant is not entitled to summary judgment based upon plaintiff's alleged inability to establish any damages at trial.  The court must next determine whether there is evidence of record sufficient to find plaintiff can withstand summary judgment in light of defendant's theory that plaintiff cannot establish causation.

## II. Whether Plaintiff Can Show Causation

Defendant argues that to recover on a breach of contract claim, a plaintiff must prove, among other things, that the plaintiff was injured as a proximate result of the breach. See Logan v. Mirror Printing Co. of Altoona, Pa., 600 A.2d 225, 226 (Pa.Super.Ct. 1991)("In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss.")(citing Exton Drive-In, Inc. v. Home Indemnity Co., 436 Pa. 480, 261 A.2d 319 (1969); Adams v. Speckman, 385 Pa. 308, 122 A.2d 685 (1956); Taylor v.

17

<u>Kaufhold</u>, 368 Pa. 538, 84 A.2d 347 (1951));[12] <u>see also</u> <u>Brader v. Allegheny General Hosp.</u>, 64

F.3d 869, 878 (3d Cir. 1995)("This is a natural extension of the general rule [a plaintiff must

plead damages resulting from an alleged breach of contract] that damages for breach of contract

are not recoverable unless there is a "causal relationship between the breach and the

loss.")(quoting <u>Robinson Protective Alarm Co. v. Bolger & Picker</u>, 516 A.2d 299, 303 n. 9 (Pa.

1986)).

        The question concerning causation in this case is whether plaintiff's actual damages, if

proven, were proximately caused by the breach.  This causation argument does not apply to a

claim for nominal damages.  <u>See</u> RESTATEMENT (SECOND) CONTRACTS § 346 ("Availability of

Damages)(. . . .(2) If the breach caused no loss or if the amount of the loss is not proved under

the rules stated in this Chapter, a small sum fixed *without regard to the amount of loss* will be

awarded as nominal damages.")(emphasis added).  Defendant asserts that there is no evidence of

record to support plaintiff's theory of causation or damages.  With respect to causation

*simpliciter*, defendant argues that plaintiff's testimony indicates that he was not looking for a

vehicle with a towing package, had no knowledge about what kind of radiator the vehicle

included, and therefore bought his F-150 without regard to its radiator.  Defendant argues that it

follows that plaintiff would have bought the vehicle even if he knew the wrong radiator was

included in the towing package.

        Defendant's causation argument appears intertwined with its argument that there are no

_____

        [12]In <u>Logan</u>, the Pennsylvania Superior court determined that damages in that case were
"entirely too speculative" and could not be proved with sufficient certainty to permit recovery.
<u>Id</u>.

damages.  Perhaps understandingly, plaintiff does not appear to address causation head on apart

from his arguments that inability to prove damages does not give defendant grounds for summary

judgment.  In its reply brief, defendant addresses causation in a footnote, stating:

> Mr. Zeno also is unable to prove the essential element of causation.
> In fact, he entirely fails to address this in his Response, instead
> lumping causation and damages into his argument about
> calculating damages. But to prevail on a contract claim, a plaintiff
> must show independently that the alleged breach caused the
> purported damages; that is, Mr. Zeno must demonstrate that the
> radiator supplied by Ford caused him to receive a radiator he did
> not want. As Ford argued in its opening brief, he cannot do so
> because he bought his F-150 truck without regard to its radiator.
> He does not recall reviewing any materials about it, he did not
> speak to anyone about it, and did not know about the issue until
> long after he sold his truck and destroyed the related paperwork.

Def.'s Reply at 4 n.2 (citing Zeno Dep. at 11, 28, 30, 62).

The court can see no basis on which summary judgment should be granted based upon

defendant's causation argument.  Like defendant's argument regarding damages, defendant's

causation arguments fail because functionality is not a requisite element.  Causation and the other

issues relating to plaintiff's breach of contract claim will be addressed by the jury at trial if the

case proceeds to that stage.  Based upon the undisputed evidence of record and viewing the

disputed evidence in the light most favorable to plaintiff, the court concludes that plaintiff

adduced sufficient evidence with respect to defendant's causation argument to withstand a

motion for summary judgment on his breach of contract claim.  The court must next determine

whether there is evidence of record sufficient to find plaintiff can withstand summary judgment

in light of defendant's theory that plaintiff cannot establish the existence of a contract between

plaintiff and Ford and, in particular, cannot establish an agency relationship between defendant

Ford and Lake View Ford.

## III. Whether Plaintiff Adduced Sufficient Evidence of the Existence of a Contract with Defendant

The heart of defendant's summary judgment motion is defendant's assertion that there

was no contractual obligation on defendant's part to supply plaintiff with an "upgraded radiator."

Defendant is correct that the existence of a contract is an essential prerequisite to bringing an

action for its breach.[13]   Defendant attacks plaintiff's theory of the case on two grounds:

> Mr. Zeno's argument that Ford breached a contract to provide him
> with a so-called "upgraded radiator" is premised on two
> unwarranted and unsupported assumptions: (1) that he had a
> contractual relationship with Ford; and (2) that his agreement to
> purchase his truck from Lake View Ford specified that he would
> receive a radiator upgrade (i.e., one that is 1.42" thick instead of

---

[13]Defendant is also correct that courts generally construe contracts as written and cannot rewrite agreements.  See RESTATEMENT (SECOND) CONTRACTS § 200 ("Interpretation of a promise or agreement or a term thereof is the ascertainment of its meaning."); see also Id. § 202 ("Rules in Aid of Interpretation"):

> (1) Words and other conduct are interpreted in the light of all the
> circumstances, and if the principal purpose of the parties is
> ascertainable it is given great weight. (2) A writing is interpreted as
> a whole, and all writings that are part of the same transaction are
> interpreted together. (3) Unless a different intention is manifested,
> (a) where language has a generally prevailing meaning, it is
> interpreted in accordance with that meaning; (b) technical terms
> and words of art are given their technical meaning when used in a
> transaction within their technical field. (4) Where an agreement
> involves repeated occasions for performance by either party with
> knowledge of the nature of the performance and opportunity for
> objection to it by the other, any course of performance accepted or
> acquiesced in without objection is given great weight in the
> interpretation of the agreement. (5) Wherever reasonable, the
> manifestations of intention of the parties to a promise or agreement
> are interpreted as consistent with each other and with any relevant
> course of performance, course of dealing, or usage of trade.").

1.02" thick). There is no genuine dispute of material fact as to
either of these misassumptions.

Def.'s Br. at 10.  These two matters, however, are not factual assumptions, but plaintiff's legal

theory of the case.  Defendant makes four arguments attacking plaintiff's theory of the breach of

contract in this case.  Defendant contends that (a) defendant was not a party to the sales contract

between Lake View Ford and plaintiff; (b) Lake View Ford is not an agent of defendant; (c) no

express terms promised plaintiff and others an upgraded radiator; and (d) plaintiff's reliance on

marketing information to establish his breach of contract claim is insufficient for his claim to

survive summary judgment.  Each argument will be discussed in turn.

**A. Whether Defendant is a Party to the Purchase Agreement Contract**

Defendant argues that because defendant was not a signatory to the purchase agreement

between Zeno and Lake View Ford, the authorized Ford dealership where plaintiff purchased his

vehicle, plaintiff cannot prove a contractual relationship between defendant and himself.

Plaintiff acknowledges that the only signatories to the purchase agreement were plaintiff and a

representative of Lake View Ford, but argues that other record evidence, including the window

sticker for the vehicle which is referenced on the purchase agreement, generates a contractual

obligation on Ford's part to supply a vehicle with the options listed and paid for by plaintiff.

Plaintiff argues that although the term "Trailer Towing Group, Class III" on the window sticker

is an ambiguous term, parol evidence is admissible to explain or clarify the meaning of this

undefined term.[14]

---

[14]Plaintiff points to this court's decision denying Ford's motion to dismiss in which the
court indicated that extrinsic evidence located during discovery may flush out the meaning of the
towing package listed on the window sticker and support a breach of contract claim.  See June

Defendant is correct that generally there can be no claim for breach of contract against an entity or individual who is not a party to the agreement. The question here is whether a party to the agreement must actually sign the agreement.[15] To be a party to a contract the party must assent which, in cases not subject to the applicable Uniform Commercial Code, may be by conduct. See RESTATEMENT (SECOND) CONTRACTS § 19 ("Conduct as Manifestation of Assent"), cmt. a ("*Conduct other than words*. Words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise. . . .Where no particular requirement of form is made by the law a condition of the validity or

_____

27, 2005 Hearing Transcript (Doc. No. 35) at 7-9. The court's decision with respect to the motion to dismiss, of course, was made pursuant to the appropriate standard. When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and views them in light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom, there is no reasonable reading upon which the plaintiff may be entitled to relief. Vallies v. Sky Bank, 432 F.3d 493, 494 (3d Cir. 2006) (internal quotations and citations omitted). In responding to a motion for summary judgment, a nonmoving party like plaintiff who will bear the burden of proof at trial on a dispositive issue cannot rest on the allegations of his complaint. Instead, the plaintiff must go beyond the pleadings and come forward with sufficient evidence and "designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (quoting FED.R.CIV.P. 56(c) and (e)).


[15]Arguably, if the goods involved in the contract included more than the towing option, the value of the goods will exceed $500.00 and the Pennsylvania Uniform Commercial Code may be applicable to this breach of contract claim. See 13 PA.CONS.STAT.ANN. § 2201(a) ("Formal requirements; statute of frauds")("(a) General Rule. – Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.")(emphasis added). If so, issues with respect to the need for defendant or its agent to sign the agreement must be considered.

enforceability of a contract, there is no distinction in the effect of the promise whether it is expressed in writing, orally, or in acts, or party in one of these ways and partly in others.  Purely negative conduct is sometimes, though not usually, a sufficient manifestation of assent.")(citation omitted).  A contract beneficiary may also sue for a breach of contract even though the beneficiary was not a party or signatory to the contract.  Here, if there is a contract between Ford and Lake View Ford relating to the purchase of the vehicle with the towing option, the issue may arise whether plaintiff is a beneficiary of that contract even though plaintiff is not a party to that contract.  See generally RESTATEMENT (SECOND) CONTRACTS, Chapter 14 ("Contract Beneficiaries").  Discovery has not closed and the facts relating to these issues may not have been fully developed for the purpose of deciding this summary judgment motion.

Defendant narrowly construes plaintiff's argument regarding what constitutes the contract at issue in this case.  Plaintiff's theory of breach of contract is that the contract was based upon the purchase agreement, the window sticker, and whatever extrinsic evidence might be necessary to flush out ambiguous terms in those documents.  Plaintiff argues that Ford breached the contractual obligation to provide plaintiff and other members of the class with the upgraded radiator that they paid for as part of the towing and cooling options.  See Compl. at 1 ("Introduction").

Ford, and not Lake View Ford or other dealers, makes and attaches a window sticker to every F-150 vehicle that it manufactures, and includes a MSRP for that vehicle including an MSRP for certain options on it.  Plaintiff argues that Ford, by its actions, and not merely Lake View Ford, is liable for the breach of the terms set forth in the window sticker:

Q. And as reflected on the window sticker, Ford makes the window

23

sticker, don't they?

A. Ford makes the window sticker and applies it to the vehicle, and
it includes a manufacturer's suggested retail price.

Q. And it has a base price, correct?

A. And it does have a base manufacturer's suggested retail price.

Q. And it separately breaks out the various options that could be
purchased with the vehicle and ascribes a price to those options,
correct?

A. It does ascribe a manufacturer's suggested retail price to any of
the options that are on that particular vehicle, but again the final
price paid by the consumer –

Q. We're not talking about the final price.

A. -- is actually related to the negotiation.

Lenz Dep. at 39-40; see also Pl.'s Counter Statement of Material Facts ¶1. As discussed above,

it will be for the jury to determine, if the case proceeds to trial, the scope of the contract. On the

record before the court, the court cannot find that plaintiff has adduced sufficient evidence of

assent by Ford for Ford to be a party to the alleged contract. Plaintiff, however, argues that

discovery has not closed and it is premature for the court to address this argument. In order to

permit plaintiff to complete discovery before ruling on the issue of whether Ford was a party to a

contract with plaintiff, the court will deny the motion for summary judgment on this ground

without prejudice to defendant's ability to raise this issue in a motion for summary judgment

based upon a fully developed record. See FED. R. CIV. PROC. 56(f)("Should it appear from the

affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."); see also St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994)("District courts usually grant properly filed Rule 56(f) motions 'as a matter of course.'")(quoting Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984) (quoting Costlow v. United States, 552 F.2d 560, 564 (3d Cir.1977))).

## B. Whether Lake View Ford is an Agent of Defendant

As noted in the class certification opinion, traditionally, a person or entity did not become liable for a breach of contract when that person or entity was not a stated party to the contract. See Travelers Indemnity Co. v. Mahiai, 2005 WL 4122388, at *5 (Pa.Com.Pl. 2005) (quoting Evans v. Otis Elevator Co., 168 A.2d 573, 575 (Pa. 1961)).

> "When there has been no direct transaction between the plaintiff and the defendant, it is usually expressed by saying that they are not in 'privity' of contract. Privity of contract exists when there is a connection or relationship which exists between two or more contracting parties."

Id. (quoting Global Payments Direct v. EVS Holding Co., No. 1373, 2005 WL 2100102, at *13 (Pa. Com. Pl. 2005)).[16]  "In other words, '[f]or parties to be considered to be in privity, a

---

[16] See generally Williams v. West Penn Power Co., 467 A.2d 811, 814-18 (Pa. 1983)(discussing and expressing disapproval for the concepts of horizontal and vertical privity in the context of breach of express warranty and products liability area).  In Williams the court noted:

> "Privity of Contract.  That connection or relationship which exists between two or more contracting parties.  It was traditionally essential to the maintenance of an action on any contract that there

contractual relationship must exist between them.'"  Travelers Indemnity, 2005 WL 4122388, at

*5 (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1006 (Pa. 2003)).  See Deynzer v.

Columbia Gas of Pennsylvania, Inc., 875 A.2d 298, 301 (Pa. Super. Ct. 2005)("[P]rivity of

contract is *personal* privity, and is confined to the *persons* of the contracting parties.")(emphasis

in original).  An agency relationship, however, may establish "privity" for the purposes of

bringing a breach of contract claim by virtue of a principal being bound by acts of its agent in

certain circumstances.  See Bailis v. Reconstruction Finance Corp., 128 F.2d 857, 859 (3d Cir.

1942)(affirming finding of no contractual privity when no agency relationship had been found:

"It is essential to the [purchasers'] theory of a contract between them and [mortgagee] that

[mortgagor's agent] be found to have acted as [mortgagee's] agent for the sale of [seller's]

unused machinery and equipment.")(citing, inter alia, RESTATEMENT CONTRACTS § 7 ("Authority

is the power of the agent to affect the legal relations of the principal by acts done in accordance

with the principal's manifestations of consent to him.")); Battle v. Seibels Bruce Ins. Co.,  288

F.3d 596, 603 (4th Cir. 2002)(upholding district court's grant of summary judgment based upon

the lack of privity of contract when record did not support any agency relationship)).

    "The basic elements of agency are 'the manifestation by the principal that the agent shall

act for him, the agent's acceptance of the undertaking and the understanding of the parties that

---

should subsist such privity between the plaintiff and defendant in respect of the matter sued on."  BLACK'S LAW DICTIONARY 1079 (rev. 5th ed. 1979).  "[W]hen there has been no direct transaction between the plaintiff and the defendant, [it] is usually expressed by saying that they are not in 'privity' of contract."  WILLIAM L. PROSSER, LAW OF TORTS 622 (4th ed. 1971)

Id. at 814 n.11.

26

the principal is to be in control of the undertaking.'" Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980)

(quoting RESTATEMENT (SECOND) OF AGENCY §1, cmt. b (1958) and citing Chalupiak v.

Stahlman, 81 A.2d 577, 580 (Pa. 1951)).[17]  "The burden of establishing agency rests upon the

party asserting it."  Id. at 61 n.8 (citing Girard Trust Bank v. Sweeny, 231 A.2d 407 (1967)). "It

is not necessary, however, to furnish direct evidence of the specific authority if it can be

reasonably inferred from the circumstances of the case, Yezbak v. Croce, 370 Pa. 263, 267-68,

88 A.2d 80, 82 (1952), such as the relation of the parties to each other and their conduct with

reference to the subject matter of the contract, Croft v. Malli, 378 Pa. 6, 12-13, 105 A.2d 372,

376 (1954), that there was at least an implied intention to create the relationship of principal and

agent. Brock v. Real Estate Land Title & Trust Co., 318 Pa. 49, 54, 55-56, 178 A. 146, 148-150

(1935)."  Id.

Defendant argues that Lake View Ford is not an agent of defendant, and therefore any

theory of contractual liability flowing from defendant to plaintiff Zeno cannot be premised upon

an agency theory.  Defendant points to the standard sales agreement which states that "Dealer is

in no respect the agent of Manufacturer." Pl.'s Ex. C at 2 (blank form sales agreement from Lake

View Ford).  This document, however, as plaintiff points out in his response brief, contemplates

the possibility of other contractual relationships between the "Buyer," "Dealer," and

"Manufacturer."  Id. The first paragraph of the "Standard Terms and Conditions" identified on

page 2 of the form sales agreement which includes the language denying agency listed above

provides in full:

---

[17]There are different variants of agency.  See generally RESTATEMENT (THIRD) OF
AGENCY.

> As used in this Order the term (a) "Dealer" shall mean the
> authorized Dealer to whom this Order is addressed and who shall
> become a party hereto by its acceptance hereof, (b) "Buyer" shall
> mean the party executing this Order as such on the face hereof, and
> (c) "Manufacturer" shall mean the Corporation that manufactured
> the vehicle or chassis, **it being understood by Buyer and Dealer
> that Dealer is in no respect the agent of Manufacturer**, and that
> **reference to Manufacturer herein is for the purpose of
> explaining generally certain contractual relationships existing
> between Dealer, Owner, and Manufacturer with respect to new
> motor vehicles.**

Id.¶ 1(emphasis added).  The standard terms and conditions also provide, inter alia, that "Dealer

shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this

Order where such failure or delay is due, in whole or in part, to any cause beyond the control or

without the fault or negligence of Dealer."  Id.¶ 4.[18]

Defendant submitted under seal the Sales and Service Agreement between Ford and Lake

View Ford which had as its purposes "to (i) establish the Dealer as an authorized dealer in

COMPANY PRODUCTS including VEHICLES (as herein defined), (ii) set forth the respective

responsibilities of the Company in producing and selling those products to the Dealer and of the

Dealer in reselling and providing service for them and (iii) recognize the interdependence of both

parties in achieving their mutual objectives of satisfactory sales, service, and profits by

---

[18]As plaintiff points out in his brief in opposition, it is not clear from the record whether
the purchase agreement executed by plaintiff included this second page, either printed on the
backside of the agreement he signed or separately attached.  See Pl.'s Br. at 14 (citing Zeno Dep.,
Ex. 2, P0020).  The blank form purchase agreement that plaintiff subpoenaed from Lake View
Ford, however, does contain this second page.  Plaintiff argues that further discovery may be
necessary, but that in any event, if these standard conditions apply to plaintiff, they bolster his
privity/agency argument because they expressly acknowledge "certain contractual relationships"
between plaintiff (as "Owner"), defendant (as "Manufacturer"), and Lake View Ford (as
"Dealer").

continuing to develop and retain a broad base of satisfied owners of COMPANY PRODUCTS."

Def.'s S.F., Ex. D (the "SSA") at 1 (preamble).  The SSA entered into by Ford and Lake View

Ford incorporated the attached "Ford Motor Company Ford Sales and Service Agreement

Standard Provisions (Form "FD925-A")" which set forth various responsibilities of each party,

including responsibilities with respect to vehicles, genuine parts, service, dealership facilities,

prices and charges, records and inspections, the use of trademarks and trade names, etc.  Id. at 6

(table of contents).  Among others, the SSA included a clause declaring that the dealership is not

an agent of Ford which reads:

> **DEALER NOT AN AGENT OF THE COMPANY**
>
> 14. This agreement does not in any way create the relationship of
> principal and agent between the Company and the Dealer and
> under no circumstances shall the Dealer be considered to be an
> agent of the Company.  The Dealer shall not act or attempt to act,
> or represent himself, directly or by implication, as agent of the
> Company or in any manner assume or create any obligation on
> behalf of or in the name of the Company.

Id. at 15 (emphasis in original).  Defendant argues that these unambiguous clauses in the

purchase agreement and the SSA trump any evidence plaintiff could produce in support of his

theory that Lake View was Ford's agent of Ford for the purpose of establishing contractual

privity between Ford and Zeno.

Defendant cites Pennsylvania and other state and federal case law in support of its

argument that Lake View Ford cannot be an agent of Ford.  For example, defendant relies on

Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc., 468 A.2d 784, 790 (Pa. Super.Ct. 1983).

In Beckman, the Superior Court of Pennsylvania affirmed summary judgment granted in favor of

defendant-manufacturer Ford.  In that case a plaintiff sued a manufacturer, Ford, and a dealership

because four weeks after entering into a written purchase agreement with the dealership for an automobile, the plaintiff in that case learned that no car had been ordered for him, and was told by the dealership that another car could be ordered for him, but at a different price than that originally agreed upon. Id. at 786. That plaintiff sued both the dealer and Ford. Ford's liability in that case depended upon an agency theory. Id. The trial court determined that there were no issues of material fact in dispute and that Ford could not be held liable for any breach of the purchase agreement because the purchase agreement included a "no-agency" provision. The trial court determined that provision to preclude a finding of agency. Id. In addition, the trial court found that the "no-agency" provision was not unconscionable. Id.

The superior court affirmed, holding that the "no-agency" defense did not need to be pleaded as a new matter under Pennsylvania Rule of Civil Procedure 1030 and 1045(b), the lower court was not required to hold an evidentiary hearing on the issue of unconscionability, and the plaintiff's argument that the trial court erred in finding that the "no-agency" clause was unconscionable was without merit. Id. at 787-88. With respect to the "no-agency" clause, the superior court refused to declare that an exclusion of agency clause was per se unconscionable. Id. at 788-89. In the absence of allegations or proof in that case of unusual conditions such as fraud, mistake, or other unusual circumstances, and because there was no evidence to show absence of meaningful choice or any term unreasonably favorable to Ford, and in light of the fact that the purchaser there was a sophisticated business person, the superior court upheld the trial court's finding that the exclusion of agency clause in that case was not unconscionable. Id.

In Beckman, as pointed out by defendant, the superior court determined that the trial court was justified in finding that the dealer – largely but not entirely based upon the no-agency clause

30

– could not be considered an agent of Ford.  <u>Id</u>. at 790.  In so doing, the superior court "reject[ed]

. . . summarily" the argument that the "no-agency" clause was ambiguous and thus should be

construed against Ford.  <u>Id</u>. at 791. The superior court upheld the trial court's finding that there

was no oral or implied contract with the dealer.  <u>Id</u>.  The plaintiff had argued that an oral

agreement existed and that oral agreement did not include a "no-agency" provision.  The superior

court rejected the buyer's argument that the trial court erred in failing to consider factual matters

which the buyer claimed established an agency relationship between the dealer and Ford – noting

evidence indicating Ford made capital contributions to the dealer and owned two-thirds of the

dealership.  <u>Id</u>.  The superior court instead determined:

> In the instant case, there is a complete **absence of proof** of
> express, implied or apparent authority from Ford to have the dealer
> act as its agent. To the contrary, the evidence of the unambiguous
> no-agency clause in the Sales Agreement mitigates against such a
> finding.

<u>Id</u>. (emphasis added).

The superior court in <u>Beckman</u>, however, did not hold that "no-agency" clauses between

automobile manufacturers and affiliated dealerships are <u>per se</u> binding and enforceable in all

circumstances.  Instead the superior court found that, on the facts of that case, the trial court was

correct in rejecting the buyer's theory that an agency relationship existed between the dealer and

manufacturer.[19]  <u>See</u> Restatement (Third) of Agency § 1.02 ("Parties' Labeling and Popular

---

[19]The superior court pointed out in a footnote that the Restatement of Agency
(Second)  provides in section 150 that "[i]f an integrated contract by its specific terms excludes
the principal as a party, extrinsic evidence is inadmissible to show that he is a party; if the
integrated contract by its specific terms makes the principal a party, extrinsic evidence is not
admissible to show that it was agreed that he should not become a party."  <u>Id</u>. at 791 n.6.  <u>But see</u>
Restatement (Third) of Agency § 1.02 discussed above.

Usage Not Controlling") cmt. b. ("The parties' agreement may negatively characterize the relationship as not one of agency, or as one not intended by the parties to create a relationship of agency or employment.  Although such statements are relevant to determining whether the parties consent to a relationship of agency, their presence in an agreement is not determinative and does not preclude the relevance of other indicia of consent.").

In this case, defendant asserts that automobile dealers are not agents of manufacturers for the purpose of vehicle sales and related matters and cites numerous decisions weighing against a finding of a principal-agent relationship between automobile manufacturers and their affiliated dealerships.  See Bushendorf v. Freightliner Corp., 13 F.3d 1024, 1026 (7th Cir. 1993)(holding it was error to allow case to go to jury in lawsuit premised on state law statutory remedy for purchasers of vehicles not conforming to express warranty under Wisconsin law; reasoning that although "[a]n agent can of course bind a principal with representations made within the scope of his employment, . . . an automobile dealer or other similar type of dealer, who like [defendant dealer] merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent.")(citations omitted); Matthews v. Ford Motor Co., 479 F.2d 399, n.13 (4th Cir. 1973)(in mechanical defect and improper repairs personal injury case under Virginia law, affirming judgment after jury verdict finding both manufacturer and dealer liable in tort for mechanical defect and improper repairs and liable for breach of warranty; mentioning briefly in a footnote without any analysis that, in that case, the district court determined that the dealer was not the agent of the manufacturer, but instead was an independent dealer); Arnson v. General Motors Corp., 377 F.Supp. 209 (N.D. Oh. 1974)(in case alleging illegal overcharging under Economic Stabilization Act of 1970 and state law breach of contract, fraud, and deceit

32

under Ohio law, manufacturer could not be liable because manufacturer was not "seller" under

the purchase agreement and the weight of authority supports the view that an automobile dealer

is an independent merchant and not an agent of the manufacturer "with regard to the sale of new

vehicles")(consider degree of control)(emphasis added); Ludwig v. Ford Motor Co., 510 N.E.2d

691, 693-94, 700 (Ind. App. Ct. 1987)(in alleged breach of express and implied warranties action

and negligent design and construction case under Indiana law, affirming summary judgment in

manufacturer's favor, noting without analysis that dealership was not manufacturer's agent "for

the purpose of selling trucks" and no Ford employee participated in the negotiations underlying

the alleged misrepresentations which led to the purchase of the trucks at issue in the

case)(emphasis added); McLemore v. Ford Motor Co., 628 So.2d 548 (Ala. 1993)(affirming

summary judgment for dealership and manufacturer on fraud and conspiracy to defraud claims

and for dealership on negligent misrepresentation claim under Alabama law, determining no

agency relationship between dealership and manufacturer looking at the evidence of control in

that case and the SSA); Clark v. Ford Motor Co., Inc., 612 P.2d 316 (Ct. App. Or. 1980)(in

revocation of acceptance and breach of warranty case under Oregon law, buyer could not revoke

acceptance from manufacturer because buyer can revoke acceptance only as to his seller, and the

dealer in that case was the seller and "there is no evidence that the dealer was acting as Ford's

agent in making the sale"); Reece v. Yeager Ford Sales, Inc., 184 S.E.2d 727, 731 (W.Va.

1971)(in breach of warranty and fraud case under West Virginia law where plaintiff sought

rescission, determining that it was "evident from the record" that the dealer was the "seller" and

was not the agent of the manufacturer, so buyer could not seek rescission from manufacturer);

Washington v. Courtesy Motor Sales, Inc., 199 N.E.2d 263 (Ill. App. Ct. 1964)(affirming trial

court's dismissal of action against manufacturer for fraud and deceit where complaint failed to allege sufficient facts to support that the dealer in that case was the agent of the manufacturer).

These decisions strongly suggest that automobile dealerships generally are not agents of automobile manufacturers regarding the selling of vehicles.  See General Motors Corp. v. Washington, 377 U.S. 425, 443 n.2 (1964)(noting without analysis in a footnote that the dealers in that case were independent merchants).  These decisions, however, do not establish a per se rule that automobile dealerships cannot be the agents of manufacturers.  None of the decisions cited by defendant – all of which deal with matters of state law outside of Pennsylvania and many of which acknowledge that determining an agency relationship is a fact-specific exercise examining, among other things, the degree of control exerted by the principal, the effect of a "no-agency" clause, and the factual circumstances underlying the claim at issue in the case – are sufficient for the court at this stage in the proceedings where discovery has not closed to find that defendant is entitled to summary judgment on the agency issue.  While not establishing a per se rule, however, these decisions show that plaintiff indeed may have an uphill battle adducing sufficient evidence to establish the alleged agency relationship in this case.

Plaintiff argues in his response brief that the existence and nature of an agency relationship under Pennsylvania law is "ordinarily . . . decided by the trier of fact."  See RefuseManagement Systems, Inc. v. Consolidated Recycling and Transfer Systems, Inc., 671 A.2d 1140, 1147 (Pa. Super. Ct. 1996)(" The question of whether a principal-agent relationship exists is ordinarily one decided by the trier of fact, however, where the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the

court.")(citing <u>Joyner v. Harleysville Insurance Co.</u>, 574 A.2d 664 (Pa. Super. Ct. 1990)).[20] In

<u>Brock v. Real Estate Land Title & Trust Co.</u>, the Pennsylvania Supreme Court recognized:

> It is a long-established principle that "whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable – indeed, frequently is not available – but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract." 21 R. C. L. § 6, p. 820.  In 2 C. J. § 32, p. 436, there is laid down this principle: "It [the fact of agency] must be determined from the facts and circumstances of the particular case, and if it appears from such facts and circumstances that there was at least an implied intention to create the relation, it will by implication be held to exist."

178 A.146, 148-49 (Pa. 1935).

In addition, as acknowledged by the United States Court of Appeals for the Third Circuit

in the context of distinguishing an agency relationship in the form of a master-servant

relationship from an independent contractor relationship, an express denial of an agency

relationship in a written contract "is not determinative of the matter, for it is the actual practice

between the parties that is crucial."  <u>Jones v. Century Oil U.S.A., Inc.</u>, 957 F.2d 84, 87 (3d Cir.

1992) (quoting <u>George v. Nemeth</u>, 233 A.2d 231, 233 (Pa. 1967)); <u>see also</u> <u>Drexel v. Union</u>

<u>Prescription Centers, Inc.</u>, 582 F.2d 781, 786 (3d Cir. 1978)(in the context of franchisor-

franchisee, "[t]he fact that the franchise agreement expressly denies the existence of an agency

---

[20]"An agency relationship is created where there is a manifestation by the principal that a person shall act for him, the person accepts the undertaking, and the parties understand that the principal is in control of the undertaking." <u>Id.</u> (citing <u>Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.</u>, 602 A.2d 1348 (Pa. Super. Ct. 1992)). "Once the agency relationship is established, authorization for the agent to act on behalf of the principal can be either expressly or impliedly granted or acquired by apparent authority."  <u>Id.</u> (citing <u>Turner Hydraulics, Inc. v. Susquehanna Construction Corp.</u>, 606 A.2d 532 (Pa. Super. Ct. 1992)).

relationship is not in itself determinative of the matter.")(citations omitted).

Plaintiff argues that under the law of Pennsylvania, "[t]he basic elements of agency are 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" Scott, 415 A.2d at 60 (quoting RESTATEMENT (SECOND) OF AGENCY § 1, cmt. b (1958))(citing Chalupiak v. Stahlman, 81 A.2d 577, 580 (Pa. 1951)). "The burden of establishing agency rests upon the party asserting it." Id. at 62 n.8 (citing Girard Trust Bank v. Sweeny, 231 A.2d 407 (Pa. 1967)). "It is not necessary, however, to furnish direct evidence of the specific authority if it can be reasonably inferred from the circumstances of the case, Yezbak v. Croce, 88 A.2d 80, 82 (Pa. 1952), such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract, Croft v. Malli, 105 A.2d 372, 376 (Pa. 1954), that there was at least an implied intention to create the relationship of principal and agent." Id. (citing Brock v. Real Estate Land Title & Trust Co., 178 A. 146, 148-50 (Pa. 1935)).

Here, plaintiff argues that he has adduced evidence sufficient to overcome summary judgment with respect to whether there is an agency relationship, pointing to (a) provisions of the SSA that Ford requires authorized dealers – and required Lake View Ford, in particular – to sign which imposes on dealers numerous duties on behalf of Ford; (b) Ford's requiring dealers to use its Source Book and Ordering Guide to explain capabilities and features of its vehicles (including super engine cooling); (c) Ford's requiring dealers to deliver to consumers and maintain a dealer copy of the window sticker that Ford affixed to every vehicle; (d) Ford's requiring dealers to provide it with periodic sales reports; and (e) Ford's retaining the right to examine dealers' records.  Plaintiff argues that this evidence is sufficient to raise a genuine issue of material fact

36

whether Lake View Ford was acting as Ford's agent with respect to the claim at issue in this case.  In the alternative, however, plaintiff in his Rule 56(f) affidavit asserted that additional discovery would enable plaintiff to stave off defendant's summary judgment motion on grounds that included the issue of agency.  Specifically, plaintiff averred that with respect to the matter of agency, "[i]f this Court does not believe that [plaintiff's "substantial evidence that Lake View Ford was Ford's agent with respect to plaintiff's purchase of the F-150 at issue"] is sufficient to deny summary judgment, Plaintiff needs to take depositions and discovery of Ford and Lake View Ford to ascertain the extent to which Ford directed and controlled Lake View Ford in its sales of new motor vehicles at the time Plaintiff purchased his F-150 through Lake View Ford." Rule 56(f) Affidavit ¶ E.

The court finds that with respect to the alleged agency relationship, which is crucial to plaintiff's breach of contract claim, and so fiercely disputed in this case, and in light of plaintiff's Rule 56(f) affidavit, that a decision on summary judgment on this issue is premature at this time. The court will allow plaintiff an opportunity more fully to develop evidence concerning the alleged agency relationship in discovery.   Plaintiff's motion for summary judgment on the ground that plaintiff cannot establish an agency relationship in support of his breach of contract claim, therefore, will be denied without prejudice.

The court notes that in light of the fact-specific characteristic of an agency analysis and the lack of clarity in plaintiff's briefing concerning the nature of the agency relationship alleged in this case that, going forward, the parties should focus their efforts to prove or disprove agency in light of the specific circumstances of this case and the applicable law.  The parties, although they submitted documents including the SSA between Ford and Lake View Ford and

37

superficially discussed facts relevant to whether an agency relationship exists between Ford and

Lake View Ford, did not analyze the SSA, its terms, or other facts in the record in sufficient

detail for the court to draw a conclusion that there is sufficient evidence concerning the

relationship between Ford and Lake View Ford for the issue of agency to be decided by a jury.

**C.  Whether the Alleged Contractual Documents Promised an Upgraded Radiator and Whether Window Stickers and Marketing Material are Sufficient to Establish a Contract**

Defendant argues that plaintiff cannot identify any express contractual term promising

him that the F-150 that he purchased would have an upgraded radiator.  Defendant asserts that

plaintiff cannot sue for breach of an unexpressed obligation – i.e., the inclusion of an upgraded

radiator – for which he did not expressly contract.  See Reformed Church of the Ascension v.

Theodore Hooven & Sons, Inc., 764 A.2d 1106 (Pa. Super. Ct. 2000)(holding that abatement of

lead paint was not an expectation of either party when absent from the express terms of the

contract and therefore it would be a contravention of contract law to read it into the contract;

allowing the case to proceed on a theory of negligence).  Defendant further argues that plaintiff

cannot rely on extrinsic evidence to establish this contractual obligation, attacking the validity in

particular of the website printouts referencing a "radiator upgrade," a copy of the Dealer Order

Guide which defendant characterizes as a "misprint" concerning a "radiator upgrade," and the

window sticker itself as evidence of a contractual obligation on Ford's part.  In addition,

defendant attacks plaintiff's reliance on what defendant characterizes as marketing material to

establish contractual liability.  See Peerless v. Wall & Window Coverings, Inc. v. Synchronics,

Inc., 85 F.Supp.2d 519 (W.D. Pa. 2000).

With respect to the window sticker specifically, defendant cites a federal statute which

requires the placement of a window sticker on every new automobile, see 15 U.S.C. §§ 1231, et seq., and decisions in support of the proposition that window stickers are insufficient to form a contract between a manufacturer and ultimate purchaser.  See Koenen v. Royal Buick Co., 783 P.2d 822, 824 (Ariz. Ct. App.1989); Landrum v. Devenport, 616 S.W.2d 359, 361 (Tex. Civ. App. 1981).  These decisions, however, did not analyze in detail nor hold that a window sticker could not be evidence supporting a breach of contract claim.

In Koenen, the appellate court upheld judgment after a bench trial in favor of the purchaser of a vehicle against a dealership, determining that a purchase order for a vehicle could support a breach of contract claim.  Id. at 825-36.  Interestingly, in Koenen, the appellate court upheld the trial court's admission of parol evidence to explain ambiguous terms of the purchase order regarding price and availability of the vehicle. 783 P.2d at 827.  The trial court's admission of the window sticker as parol evidence to explain the ambiguous purchase price in that case was upheld.  Id.

In Landrum, the appellate court reversed an instructed verdict during a jury trial in favor of the defendant dealership in a case where the plaintiff had sought to purchase a limited edition Indy pace car.  In that case the plaintiff had signed a purchase order in advance with a blank price term after discussing with the dealership that the price would be the car's sticker price which would be between $12,000.00 and $18,000.00.  Id. at 361.  When the car arrived, its market value of $22,000.00 exceeded the sticker price and the dealership demanded the market price for the car.  Id.  The appellate court held that there was a genuine dispute of fact regarding what the agreed price would be, and that parol evidence was admissible for proof of the actual price.  Id. at 361-62.  It is true that these decisions did not find that window stickers are, in and of themselves,

39

enforceable contracts – in fact, neither decision discussed the issue. These decisions, however, did not analyze in detail nor held that a window sticker could not be evidence supporting a breach of contract claim. To the contrary, both cases discussed the window stickers as admissible extrinsic evidence of ambiguous terms of the contracts at issue in those cases.

The arguments raised by defendant in this regard fail at the summary judgment stage of the proceedings by reason of plaintiff adducing sufficient evidence to support a breach of contract claim against Ford if agency can be proven. Plaintiff's evidence could support a trier of fact finding an inference that plaintiff, by purchasing a vehicle with a towing option, paid for an upgraded radiator and did not receive one. The court, as discussed at the motion to dismiss stage and the class certification hearing, and as set forth in the class certification opinion, concluded that it might be possible for plaintiff to prevail on such a theory by virtue of the ambiguous description of the towing option referenced on the window sticker permitting parol evidence. See Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004)("[W]here a term in the parties' contract is ambiguous, 'parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.'" Id. (quoting Estate of Herr, 161 A.2d 32, 34 (Pa. 1960)).

While the window sticker standing alone, and other evidence relied upon by plaintiff standing alone, might not be sufficient as a matter of law to establish a contractual obligation on Ford's part, the totality of the circumstances in this case, if supported by competent evidence at trial, could allow a jury to find that Ford, assuming agency can be established, owed a contractual obligation to plaintiff to include the component 1.42" thick "upgraded radiator" on his vehicle in

light of his purchase of, and extra payment for, the towing option.  Defendant's arguments attacking the kinds of evidence that plaintiff relies upon to establish this contractual obligation are insufficient to support a grant of summary judgment, but are arguments that go to the weight which a jury will give that evidence at trial.  By reason of there being genuine issues of material fact in dispute, summary judgment cannot be granted in favor of defendant on these grounds.

### Conclusion

After reviewing the undisputed and disputed material facts of record, and for the reasons set forth above, the court determines that decisions on whether Ford was a party to the contract and whether Lake View Ford was an agent of Ford are premature at this time.  Accordingly, summary judgment in favor of defendant cannot be granted on those issues.  Defendant's motion for summary judgment with respect to those arguments is denied without prejudice.  The court denies defendant's motion for summary judgment on the other grounds raised by defendant for reasons set forth herein.

### Order

**AND NOW**, this 28th day of March, 2007, upon consideration of the parties' arguments and supporting documents, **IT IS ORDERED** that defendant's motion for summary judgment (Doc. No. 49) is **DENIED**.

By the court:


/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge


cc:     Counsel of record